UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Francine Yates, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 4127 |
| | ) | |
| The John Marshall Law School, | ) | Hon. Marvin E. Aspen |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is Plaintiff Francine Yates' application to proceed *in forma pauperis* with her multi-count complaint against the John Marshall Law School ("the School"). She alleges that the School violated various civil rights provisions by denying her admission. As set forth below, we grant Plaintiff's application but dismiss several counts of her Complaint.

## STANDARD OF REVIEW

Before granting leave to file *in forma pauperis*, we must first determine whether or not Plaintiff is indigent. 28 U.S.C. § 1915(a)(1). We must also conduct an initial review of Plaintiff's complaint and dismiss the action if we find that (1) it is frivolous or malicious; (2) it fails to state a claim on which relief may be granted; or (3) it seeks damages from a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B)(i)-(iii). As to the second factor, failure to state a claim, we apply the test for dismissal under Rule 12(b)(6), which requires "that a complaint contain 'enough facts to state a claim that is plausible on its face.'" *Moore v. F.B.I.*, No. 07-1294, 2008 WL 2521089, at *1 (7th Cir. June 25, 2008) (*quoting Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1974 (2007)); *see also George v. Smith,* 507 F.3d 605, 608 (7th Cir. 2007). Because Plaintiff is proceeding *pro se*, we have a responsibility to construe her complaint liberally. *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). It is the "well established duty of the trial court to ensure that the claims of a *pro se* litigant are given a fair and meaningful consideration." *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987).

## ANALYSIS

### A. Indigence

In support of her allegation of poverty, Plaintiff submitted the required financial affidavit. She states that she earns a few hundred dollars per month in her new job, a summer position with Convention Connection Center. Specifically, she states that she earned $272.25 in June and $752.50 in July. (IFP Applic. ¶ 2.) She further declares that neither she, nor anyone in her household, has additional sources of income, assets, or bank accounts containing more than $200. (*Id.* ¶¶ 3-7.) Even if we assume that Plaintiff earns $750 a month, her annual income would total $9,000, placing her under the poverty guideline for a single-person household. (*See* Health & Human Services 2008 Poverty Guidelines, setting the guideline at $10,400 for a single person.) We find Plaintiff's allegation of poverty to be true and thus briefly consider whether she has stated any valid claims for relief against the School.

### B. Sufficiency of Allegations under Rule 12(b)(6)

According to the Complaint, the School rejected Plaintiff's 2008 applications for enrollment on the basis of her mental disability (depression and anxiety), race (African-American), sex (female) and religion (Christian). (Compl. at 3-19, 27-30 (Charges A-D & F).) The School, through its employees, also allegedly harassed her because of her sex, disability,

religion and whistle-blowing activities with respect to her prior employer. (*Id.* at 19-26 (Charges D-E, G-H).) Plaintiff further alleges that School officials retaliated against her because of her disability, religion and whistle-blowing activities by denying her application and her request for a refund of her application fee, refusing to meet with her, and initially refusing to provide her with copies of her application materials. (*Id*. at 22-24, 30, 33, 38 (Charges E, G-H).) In addition to these alleged violations of federal and state statutes, Plaintiff contends that the School committed various state-law torts, including defamation (Charge I), intentional and negligent infliction of emotional distress (Charge J), and fraud (Charge K). (*Id.* at 40-51.) As a remedy for these unlawful actions, Plaintiff asks that we find in her favor "with no appeals granted on behalf of" the School, disbar the transgressors and terminate their employment with the School,[1] require the School to admit her and reimburse all fees associated with her legal education, and award her compensatory and punitive damages. (*Id.* at 52.)

### *1. Discrimination and Harassment Claims*

Plaintiff's discrimination and harassment claims appear based on the School's alleged violations of: the Illinois Human Rights Act ("IHRA"), the Illinois Constitution, the Individuals with Disabilities Education Act ("IDEA")[2], the Illinois Mental Health and Developmental Disabilities Code ("MHDDC"), Title VII of the Civil Rights Act ("Title VII"), the Americans with Disabilities Act ("ADA"), and § 504 of the Rehabilitation Act ("§ 504"). (*See id*., Charges

---

[1] We do not have the authority to grant Plaintiff all of the relief she seeks. For example, we have no power to deny the School any right to appeal, nor is it our province to disbar attorneys.

[2] Plaintiff refers to this statute as the Education of the Handicapped Act, but it was amended and retitled in 1990. *Bd. of Educ. of Ottawa Twp. High Sch. Dist. 140 v. Spellings*, 517 F.3d 922, 926 (7th Cir. 2008).

A-H.) We address each briefly below.

### a. Claims of Discrimination under the IHRA and Illinois Constitution

Plaintiff's claims under the IHRA fail as a matter of law because she has not exhausted her remedies before the state tribunal, the Illinois Human Rights Commission ("IHRC"). *See* 775 ILCS 5/8-111(c). "[I]n order to seek redress under state law for . . . harassment and discrimination, a complainant must proceed under the IHRA. More importantly, a complainant must exhaust administrative remedies under that Act, then seek review of the administrative decision in state court." *Kosiarek v. Vill. of Villa Park*, No. 86 C 1502, 1987 WL 14118, at *3 (N.D. Ill. Sept. 30, 1987). Interpreting the IHRA, federal and state courts in Illinois consistently rule that "[c]ourts have no jurisdiction to hear independent actions for civil rights violations." *Mein v. Masonite Corp.*, 109 Ill. 2d 1, 6, 485 N.E.2d 312, 314 (Ill. 1985); *see Flaherty v. Gas Research Inst.*, 31 F.3d 451, 458 (7th Cir. 1994) ("Judicial review is [ ] available under the IHRA only after the [IHRC] has issued a final order on a complaint."); *McCraven v. City of Chi.*, 18 F. Supp. 2d 877, 882 (N.D. Ill. 1998) ("Under Illinois law, the [IHRC] has exclusive authority over claims arising under the IHRA."). While the failure to exhaust administrative remedies is an affirmative defense, it seems implausible that Plaintiff could have exhausted a claim before the IHRC, given the short time span between the School's alleged conduct – occurring primarily in May and June of 2008 – and the filing of the complaint on July 21, 2008. *See, e.g.,* 56 Ill. Admin. Code. Pt. 2520 ("Procedures of the Department of Human Rights"). Accordingly, we dismiss her claims under the IHRA.[3]

---

[3] If Plaintiff has filed a complaint with, and received a final order from, the IHRC, she may seek leave to replead these allegations.

Plaintiff's failure to proceed before the IHRC also dooms her claims based on violations of the Illinois Constitution. In Charges A through H, Plaintiffs cites to various provisions in the Illinois Constitution's Bill of Rights as support for her claims of discrimination, harassment and retaliation. (*See* Compl. Charges A-H.) Specifically, Plaintiff refers to Article I, sections 18 through 20, which make certain forms of discrimination unlawful. *See* Ill. Const., art. I, §§ 18-20. Section 18, for example, provides that "[t]he equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts." Ill. Const., art. I, § 18. The Illinois Constitution, however, does not authorize a private right of action to enforce these provisions. Rather, the legislature created the IHRA "[t]o secure and guarantee the rights established by [s]ections 17, 18 and 19 of Article I of the Illinois Constitution of 1970." 775 ILCS 5/102(F); *see Lipsey v. Chi. Cook Cty. Crim. Justice Comm'n*, 638 F. Supp. 837, 840-41 (N.D. Ill. 1986); *see also Teverbaugh v. Moore*, 311 Ill. App. 3d 1, 5-6, 724 N.E.2d 225, 229 (1st Dist. 2000) (holding that language of section 18 did not "give rise to a private right of action" for sexual harassment); *Yount v. Hesston Corp.*, 124 Ill. App. 3d 943, 947-49, 464 N.E.2d 1214, 1217-19 (2d Dist. 1984) (concluding that plaintiff was not entitled to maintain a private action under section 19 for employment discrimination based on a mental handicap). Plaintiff's avenue to seek relief for the alleged constitutional violations lies with the IHRC and not the Illinois or federal courts. We further observe that section 19, even if actionable, is inapplicable to Plaintiff's disability-related claims because she has not alleged that the School discriminated against her "in the sale or rental of property" or as an employer. Ill. Const., art. I, § 19.

Section 20 does not aid Plaintiff either, as Illinois courts have repeatedly held that its

language does not create a private right of action. *AIDA v. Time Warner Entm't Co., L.P.*, 322 Ill. App. 3d 154, 772 N.E.2d 953 (1st Dist. 2002); *Irving v. J. L. Marsh, Inc.*, 46 Ill. App. 3d 162, 165, 360 N.E.2d 983, 984 (3d Dist. 1977). This section states that, "[t]o promote individual dignity, communications that portray criminality, depravity or lack of virtue in, or that incite violence, hatred, abuse or hostility toward, a person or group of persons by reason of or by reference to religious, racial, ethnic, national or regional affiliation are condemned." Ill. Const., art. I, § 20. Nonetheless, "however laudatory or commendable the purposes or policies expressed by these words are, section 20 was never intended to establish any new cause of action." *AIDA*, 322 Ill. App. 3d at 162, 772 N.E.2d at 961 (*quoting Irving*, 46 Ill. App. 3d at 165, 360 N.E.2d at 984). Section 20 is simply hortatory; in other words, "[t]he legislature is merely expressing its distaste and disapproval of such communications." *AIDA*, 322 Ill. App. 3d at 162, 772 N.E.2d at 961. As a result, Plaintiff's claim under Article 1, section 20 cannot stand. In light of the above, Plaintiff's claims under the Illinois Constitution are hereby dismissed.

   **b.** **IDEA Claim**

  To the extent that Plaintiff asserts an IDEA claim, it fails because the statute does not apply to her or to the legal education she seeks. (Compl. at 10.) *See, e.g.*, 20 U.S.C. § 1400 *et seq.* The purpose of the IDEA is to ensure that disabled children between the ages of 3 and 21 receive "a free appropriate public education." *Id.* § 1400(d)(1)(a); 34 C.F.R. § 300.101. Plaintiff's law school application, attached to the Complaint and incorporated therein, indicates that she was born in 1968. (Compl., Exs. B-C, School Application ¶ 6.) She thus does not fall into the age range of students intended to benefit from the IDEA. In addition, the "free appropriate public education" guaranteed by the IDEA refers to "special education and related

services," including "appropriate preschool, elementary, or secondary school education." 20 U.S.C. § 1401(8). The IDEA does not cover post-secondary education, let alone post-graduate work such as law school. For these reasons, Plaintiff cannot state a claim under the IDEA.

### c. MHDDC Claim

It is unclear whether Plaintiff is pursuing a separate claim under the MHDDC. (Compl. at 11.) *See* 405 ILCS 5/1-100 *et seq.* Even if she intended to do so, we hold that the Complaint does not state a claim for relief under that statute. In pertinent part, the MHDDC provides that "[n]o recipient of services shall be deprived of any rights, benefits, or privileges guaranteed by law, the Constitution of the State of Illinois, or the Constitution of the United States solely on account of the receipt of such services." *Id.* 5/2-100(a). (Compl. at 11.) We reasonably infer from the Complaint that Plaintiff is a "recipient of services" and assume that an implied right of action exists under the MHDDC.[4] Regardless, we find that the statute is "not germane" to this litigation. *Yount*, 124 Ill. App. 3d at 946-47, 464 N.E.2d at 1216-17. First, we reiterate that the IHRA provides the exclusive remedy for civil rights violations under Illinois law. *Id.* (concurring with the parties that section 2-100 of MHDDC "has no relevance" to discrimination lawsuit against employer). Second, and as Plaintiff suggests, the aim of the MHDDC is to ensure that the rights of mentally disabled individuals are not violated as they are evaluated and recommended for voluntary or involuntary treatment. (Compl. at 11 (broadly stating that the

---

[4] The Illinois Supreme Court has not addressed whether this statute gives rise to a private right of action, although at least two courts have held that an implied right exists. *See Marx v. Northwestern Mem'l Hosp.*, No. 04 C 5688, 2007 WL 1280643, at *3-4 (N.D. Ill. Apr. 30, 2007) (concluding that the "Supreme Court of Illinois is likely to recognize an implied cause of action of claims brought pursuant to the [MHDDC]"); *Montague v. George J. London Mem'l Hosp.*, 78 Ill. App. 3d 298, 301-03, 396 N.E.2d 1289, 1291-93 (1st Dist. 1979).

-7-

"voluntary and involuntary treatment of mentally ill . . . persons in Illinois is governed by the [MHDDC]").) "The purpose of the [MHDDC] is to safeguard both the persons involved in such [involuntary hospitalization] proceedings and the public." *In re Presswood*, 51 Ill. App. 3d 104, 108 n.2, 366 N.E.2d 442, 446 n.2 (1st Dist. 1977); *see* 405 ILCS 5/2-100 *et seq.*; *see also Threlkeld v. White Castle Sys., Inc.*, 127 F. Supp. 2d 986, 989-90 (N.D. Ill. 2001) (reviewing goals of MHDDC). These goals are not at issue here, as Plaintiff has not alleged that the School sought to force her into treatment in violation of the MHDDC's requirements.[5] We thus dismiss Plaintiff's claim under the MHDDC. For the sake of clarity, we add that all of Plaintiff's discrimination claims under Illinois law are thus dismissed.

### d. Federal Claims of Sex, Race and Religious Discrimination

Although she cites to Title VII, Plaintiff cannot proceed thereunder because she has not alleged that she is, was or sought to be an employee of the School. (*See* Compl. at 27, 33, 39 (Charges E, G-H).) She applied for an education, not a job, and therefore is not covered by Title VII. 42 U.S.C. § 2000e-2 (discussing employment practices forbidden by Title VII); *see id.* § 2000e (defining "employer" and "employee").[6] And as described above, her state-law

---

[5] Though Plaintiff states that "defendants were trying to have her removed from society and committed into a mental institution," (Compl. at 45), she is plainly referring to the defendants in her separate lawsuit against the Illinois Department of Human Rights, Chief Legal Counsel and Chicago Transit Authority ("CTA"), (*id*. at 44). There are no factual allegations in the Complaint suggesting a plausible MHDDC claim against the School.

[6] After examining Plaintiff's allegations, we discern that Title VI or Title IX might be more relevant to Plaintiff's circumstances. *See* 42 U.S.C. § 2000d (Title VI); 20 U.S.C. § 1681 (Title IX). Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination claims have failed as a matter of law. Accordingly, we dismiss Charges B through D, as well as F and G, as they currently stand.[7]

### e. Federal Claims of Disability Discrimination

Charges A and E allege that the School discriminated against Plaintiff because of her disability. (*Id.* at 3-12, 22-27.) According to the Complaint, the School rejected Plaintiff's January and May 2008 applications for enrollment, thus denying her the ability to pursue a legal career. (*Id.* at 2-5.) Following her receipt of the School's rejection letter dated May 5, 2008, Plaintiff met with the Dean of the School, William Powers. (*Id.* at 2-3 & Ex. P.) In that meeting, she informed Powers of her psychiatric disabilities and general hardships. (*Id.* at 2.) Although Powers agreed to review her file, the School refused to accommodate her low LSAT score or otherwise change its admissions decision. (*Id.* at 2-3.) Among other things, Plaintiff generally alleges that the School violated the ADA and § 504 by rejecting her application, relying on her LSAT score in making that decision, maintaining a facility that is inaccessible to the disabled, and specifically preventing her from entering the School.[8] (*See id.* at 2-3, 7-8, 19-

---

discrimination under any education program or activity receiving Federal financial assistance," with certain exceptions. 20 U.S.C. § 1681. Of course, at this juncture, we need not address whether these statutes are applicable or constitute appropriate bases for her lawsuit. Nor will we amend her complaint *sua sponte* – she is the master of her complaint and responsible for ensuring that she has a good faith legal and factual basis for pursuing each of her claims. *See, e.g., Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (noting that "even *pro se* litigants are masters of their own complaints.").

Even if Titles VI and IX are relevant to her sex and race discrimination claims in lieu of Title VII, Plaintiff has not identified any federal statute supporting her allegations of religious discrimination. (Compl. at 27-33 (Charges F-G).)

[7] On July 31, 2008, Plaintiff informed chambers staff that she intends to file an amended pleading, but she has yet to do so.

[8] The Complaint alleges that the School conspired with Mayor Daley and Ronald Huberman, President of the CTA, "to deny her access into" the School, apparently because they

-9-

23, 35-37, 39-40.)

To state a claim under § 504 or Title II of the ADA, Plaintiff must allege that: (1) she is disabled as defined under the applicable statute; (2) she is qualified for the benefits that she sought; (3) she was denied those benefits because of her disability; and (4) the School is a public entity (for an ADA claim) or receives federal funds (for a § 504 claim). 29 U.S.C. § 794(a) (setting out text of § 504); 42 U.S.C. § 12132 (setting out text of Title II of ADA); *see Blazquez v. Bd. of Educ. of City of Chi.*, No. 05-4389, 2007 WL 2410369, at *8 (N.D. Ill. Aug. 20, 2007) (describing elements of § 504 claim); *Herdman v. Univ. of Ill.*, No. 96-8025, 1998 WL 774684, at *6 (N.D. Ill. Oct. 28, 1998) (describing elements of ADA Title II claim). The Complaint states that the School is a public entity and receives federal funding. (Compl. at 9, 11.) Plaintiff also alleges that she has a disability, that she was otherwise qualified to be accepted into the School, and that she was denied that benefit because of her disability. Based on our initial review of the Complaint for purposes of examining her IFP application, we conclude that Plaintiff has sufficiently stated claim under Title II of the ADA and § 504.

Plaintiff has also adequately alleged a violation of ADA's Title III, which provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182.

> The core meaning of this provision, plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space) that is open to the public

---

all receive federal funding, or are involved in an embezzling scheme, or both. (Compl. at 7, 45.) These allegations are conclusory, speculative and vague. They are insufficient to state a claim of conspiracy and will not be considered.

> cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do.

*Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 558-59 (7th Cir. 1999) (internal citation omitted). The Complaint alleges that the School operates (if not owns) the building in which it is located, and we reasonably infer an allegation that it constitutes a public accommodation. (*See* Compl. at 7.) Further, Plaintiff claims that School personnel told her not to come see Powers again and removed her from the building because of her disability. (*See id.* at 14, 20-21, 28, 31, 37.) While we cannot evaluate the merits at this stage of the litigation, we conclude these allegations state a Title III claim under our current level of scrutiny.

Finally, we hold that Plaintiff may proceed with her disability-related retaliation claim. To state a claim for retaliation under either the ADA or § 504, Plaintiff must plead that: "(1) she engaged in statutorily-protected activity; (2) she suffered an adverse action; and (3) there was a causal connection between the two events." *Blazquez*, 2007 WL 2410369, at *8; *see* 28 C.F.R. §§ 35.134, 36.206 (ADA regulations, providing that "[n]o public or private entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge . . . or participated in any manner in an investigation, proceeding, or hearing under this Act or part"). Here, Plaintiff alleges that she informed Powers that she was considering legal action because of the School's unlawful discrimination against her. (Compl. at 34.) She further alleges that the School retaliated against her after she "engaged in the protected activity of complaining to [Powers] about the coercion, harassment and retaliation she was experiencing at the hands of Ronald Huberman and Mayor Richard Daley," against whom she had previously filed discrimination charges. (*Id.* at 22-23.) These allegations raise several questions, including the timing of her complaints to Powers and

the legal significance of a complaint to Powers concerning the alleged discriminatory conduct of third parties (i.e., Huberman and Mayor Daley). We cannot conclude that her allegations are entirely implausible, however, and thus shall not dismiss them at this juncture and in light of the broad language of these statutes and their regulations.[9]

### 2. *Tort Claims*

In addition to her discrimination claims, Plaintiff alleges that the School engaged in tortious conduct in violation of state law. (*Id.* at 39-50 (Charges I-K).) We address each such claim below.

#### a. **Defamation**

In Charge I of the Complaint, Plaintiff claims that the School defamed her reputation. (*Id.* at 39-41.) To state a defamation claim under Illinois law, a plaintiff must allege "that defendant made a false statement about the plaintiff, that defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Emery v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 377 Ill. App. 3d 1013, 1021, 880 N.E.2d 1002, 1009 (1st Dist. 2007) (*quoting Solaia Tech., LLC v. Specialty Publ'g Co.*, 221 Ill. 2d 558, 579, 852 N.E.2d 825, 838 (2006)).

Here, Plaintiff claims that her "reputation as a public service official and high powered, unchallenged soon-to-become attorney was damaged and defamed" based on statements made by

---

[9] To the extent that Charge H purports to state a claim under the Whistleblower Enhancement Protection Act of 2007 (H.R. 985), it must fail. First, our research indicates that this bill has not yet been signed into law. Second, the Whistleblower Protection Act of 1989 (which may ultimately be amended by H.R. 985) "protects the employees of federal agencies," and Plaintiff has not alleged that she has ever been employed by the federal government. *Frobose v. Am. Sav. & Loan Ass'n of Danville*, 152 F.3d 602, 611-12 (7th Cir. 1998); *see* 5 U.S.C. § 1201 *et seq.*

Powers or other School personnel.[10] (Compl. at 41.) For example, she states that "apparently, Dean Powers or one of his superiors gave verbal and/or written instructions to the staff members of [the School] to retaliate against" her. (*Id.* at 40.) Even assuming this allegation is true, as we must, Plaintiff has not alleged what these "instructions" included that might be considered defamatory. (*Id.*) Plaintiff has not alleged a false statement by the School or its personnel. Thus, her defamation allegations are entirely speculative and must be dismissed. *See Twombly*, 127 S. Ct. at 1965 (holding that "[f]actual allegations must be enough to raise a right to relief above the speculative level").

### b. Infliction of Emotional Distress

Plaintiff has also alleged claims of intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). She alleges that she was "outraged when she was being denied access into the [School] for fraudulent reasons" and that the School acted with a "reckless disregard for the likelihood of causing" her such distress.[11] (Compl. at 41-42.) She further alleges that the School, particularly Powers, knew that she was vulnerable and nonetheless engaged in outrageous conduct. (*Id.* at 42.)

To state an IIED claim, Plaintiff must allege that: (1) the School's conduct was extreme and outrageous; (2) the School intended that its conduct would "cause severe emotional distress

---

[10] Plaintiff claims that she is a "public service official" due to her prior employment with "the Capital Investment office of the [CTA]." (Compl. at 39.)

[11] Plaintiff alleges that the School and its admissions committee owed her "the fiduciary responsibility and duty of giving her admissions application a correct, just and ethical evaluation based on all disclosed information." (Compl. at 42.) As with many of her allegations, this claim is conclusory and speculative. The Complaint does not include any factual allegations suggesting that the School or Powers entered into a fiduciary relationship with Plaintiff.

-13-

or [was] aware of a high probability of causing severe emotional distress;" and (3) the School's conduct actually caused severe emotional distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 982 (7th Cir. 2008); *Dunn v. City of Elgin*, 347 F.3d 641, 651 (7th Cir. 2003). Liability for IIED "does not extend to mere insult, indignities, threats, annoyances, petty oppressions or trivialities" and can attach "only in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 935, 803 N.E.2d 619, 625 (1st Dist. 2004) (internal quotations and citations omitted). Indeed, the "distress inflicted must be so severe that no reasonable person could be expected to endure it." *Id.*; *see also Hobson v. Tishman Speyer Props., L.P.*, No. 07-5744, 2008 WL 2625905, at *5-6 (N.D. Ill. June 27, 2008); *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (Ill. 1989). Plaintiff explicitly pled the second element of the IIED *prima facie* case, and at this point we reasonably infer the remaining elements from the Complaint. Plaintiff states that Powers knew about her vulnerable state and that her mental anguish increased due to the School's rejection of her application and its "subsequent actions." (Compl. at 41-42.) Accepting Plaintiff's allegations as true, they are enough (though perhaps just enough) to rise above the speculative level and survive this initial review.

With respect to the NIED claim, Illinois adheres to the "impact rule," allowing "a plaintiff to recover for [NIED] only if the distress is directly and causally related to a physical injury." *Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002); *see also Corgan v. Muehling*, 143 Ill. 2d 296, 303-04, 574 N.E.2d 602, 604-06 (Ill. 1991). Plaintiff has not alleged that her emotional distress resulted from a physical injury. The Complaint does not mention any physical contact or injury caused by the School or its personnel that might have exacerbated her

emotional distress. Accordingly, the NIED claim is dismissed.

### c. Fraud

Plaintiff's final claim is that the School committed common law fraud by falsely informing her on June 9, 2008 that her application materials could not be returned.[12] (Compl. at 46.) Indeed, only days later she was permitted to pick up those documents. (*Id.* at 46.) She also states that the School violated several of the policies set forth in the student handbook, which she claims constitutes a binding contract. (*Id.* at 47-48.)

In Illinois, the "elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent to induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496, 675 N.E.2d 584, 591 (Ill. 1997); *see LaScola v. U.S. Sprint Commcn's*, 946 F.2d 559, 568 (7th Cir. 1991); *Hart v. Boehmer Chevrolet Sales, Inc.*, 337 Ill. App. 3d 742, 751, 787 N.E.2d 350, 356-57 (2d Dist. 2003); *Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696, 703, 767 N.E.2d 376, 381-82 (1st Dist. 2002). With respect to the first element, a "statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." *Dahlin v. Jenner & Block, L.L.C.*, No. 01 C 1725, 2001 WL 1195775, at *4 (N.D. Ill. Oct. 5, 2001) (*quoting Cont'l Bank, N.A. v. Meyer*, 10

---

[12] Her claim that this conduct also constitutes perjury is unfounded and shall not be considered. She has not alleged that these false statements were made while the speaker was under a sworn oath. (*See* Compl. at 46.) Moreover, she has no authority to prosecute a perjury action. (*See id.* at 47.)

F.3d 1293, 1298 (7th Cir. 1993)). With these standards in mind, we hold that Plaintiff has not stated a claim for fraud.

Plaintiff alleges that the School perpetrated fraud on June 9, 2008, when Powers told her via email that her application materials would be retained by the School and could not be returned to her. (Compl. at 46.) She alleges that this statement was a "blatant lie" because she received another email on June 16 informing her that she could come by the School to retrieve those documents, which she did on June 20. (*Id.*) Nonetheless, these allegations are insufficient because – even if Powers knowingly lied to her – she has not alleged that: (1) he intended to induce her to act in any way; (2) she relied on this statement; or (3) she suffered any resulting damages.

Plaintiff next claims that the School committed fraud by violating "several of their own handbook policies." (*Id.* at 47.) Of particular relevance, she alleges that Powers violated the promises made in a letter included in the handbook. In that letter, Powers stated that it is his "responsibility and pleasure to serve the needs of students in every possible way." (*Id.* Ex. J.) He added: "Please know that my door is open to you, and my staff will always be open to assist you and to address your concerns." (*Id.*) Plaintiff alleges that these statements are fraudulent because her "needs were not fully served" and Powers "did not make himself available to see [her] or answer any of her future concerns and questions." (*Id.* at 47.)

Plaintiff has not alleged, however, that Powers knew these statements to be false when he issued the letter, as required to plead the second element of a fraud claim. In addition, Powers' statements are not "material facts." For example, his promise that his staff "will always be open to assist you and to address your concerns" concerns future events, as opposed to then-existing

-16-

facts, and cannot serve as the basis for a fraud claim in Illinois. *Powers v. Corn Prods. Int'l, Inc.*, 557 F. Supp. 2d 921, 927 (N.D. Ill. 2008) (citation omitted) ("Statements regarding future events are considered opinions, not statements of fact."); *see Dahlin*, 2001 WL 1195775, at *4. Moreover, Powers' introductory comments are generic, non-substantive and essentially motivational, rather than specific "facts" that could be taken literally. Indeed, no reasonable person would interpret these comments to mean that Powers' door literally will "be open" at all times or that he will take any steps to please a student or applicant. *See, e.g., Cont'l Bank, N.A.*, 10 F.3d at 1299 (affirming dismissal of investor's fraud claim against bank and noting that "[n]o one could take literally a statement that a program of breeding thoroughbred horses was 'risk free'"). While his letter expresses his intention to assist the School's students to the extent possible, that noble intention is not a pre-existing fact sufficient for a fraud claim. *Sommer v. United Sav. Life Ins. Co.*, 128 Ill. App. 3d 808, 813, 471 N.E.2d 606, 611 (2d Dist. 1984) ("Illinois law is clear that a misrepresentation as to a future promise or intent will not sustain an action for fraud."); *see also Unique Envelope Corp. v. GSAmerica, Inc.*, No. 00 C 7811, 2002 WL 598511, at *3 (N.D. Ill. Apr. 18, 2002) ("The misrepresentation must be an affirmance of fact and not a mere promise or expression of opinion or intention; or in other words the fraud must be in the original contract or transaction, and not in its fulfillment." (internal quotations omitted)). As a result, we dismiss Plaintiff's fraud claims against the School.

**CONCLUSION**

For the foregoing reasons, we grant Plaintiff's application to proceed *in forma pauperis* but dismiss Charges B, C, D, F, G, H, I and K. We also dismiss the NIED claim found in Charge J. Plaintiff may proceed with her claims of disability discrimination and retaliation, described primarily in Charges A and E, and her IIED claim. It is so ordered.

                                                Honorable Marvin E. Aspen
                                                U.S. District Court Judge

Dated: September 22, 2008