UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Francine Yates, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 4127 |
| | ) | |
| The John Marshall Law School, | ) | Hon. Marvin E. Aspen |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

On November 5, 2008, Plaintiff Francine Yates filed a multi-count Amended Complaint against the John Marshall Law School ("JMLS"), the Chicago Transit Authority ("CTA"), the City of Chicago ("the City"), and the State of Illinois ("the State").[1] Yates alleges that JMLS violated various civil rights statutes and Illinois law by denying her admission into law school. Presently before us is JMLS's motion to dismiss, which we grant for the reasons discussed below.[2]

## BACKGROUND

According to the Amended Complaint, Yates applied for admission to JMLS for the

---

[1] Although we previously informed Yates that she must properly serve the Amended Complaint on the newly-added defendants, she neglected to do so. (Order of 11/4/08, Dkt. No. 15.) Indeed, the court's docket sheet indicates that Yates has failed to effectuate service of summons and the Amended Complaint on the CTA, the City and the State.

[2] We also deny Yates's Motion to Add Retaliation Claim via an Oral Argument or an Amended Complaint as Well as Move for Injunctive Relief. (Dkt. No. 25.) Yates seeks to amend her complaint to add a retaliation claim based on JMLS's filing of a motion to dismiss. (Yates Mot. ¶ 5.) As JMLS points out, there is nothing improper or retaliatory about a defendant filing a Rule 12 motion in response to a complaint. Such a response is commonly employed and, moreover, authorized by the Federal Rules of Civil Procedure.

January 2008 and August 2008 semesters. (Am. Compl. ¶ 25.) She indicated on both applications that she was homeless. (*Id.* ¶ 28.) JMLS ignored her first application because she failed to pay the application fee. (*Id.*) On May 5, 2008, JMLS informed Yates by letter that her second application had been rejected. (*Id.* ¶ 30.) Thereafter, on or about May 12, 2008, Yates went to speak with William Powers, Dean of JMLS. (*Id.* ¶¶ 30, 40, 88.) At that time, she complained to Powers about "the continued harassment, retaliation and coercion that she was being subjected to by Ronald Huberman and Mayor Richard Daley to fraudulently embezzle money from CTA's claim fund."[3] (*Id.* ¶ 31; *see also id.* ¶ 88.) Among other things, she also informed Powers of her Christian faith and homelessness, as well as her mental disabilities. (*Id.* ¶¶ 32, 129.) Indeed, in 2003, Yates was diagnosed with "major depression, anxiety and high blood pressure." (*Id.* ¶ 38; *see also id.* ¶ 137.) After hearing Yates's complaints and disclosures, Powers agreed to review her file and "let her know of the board's decision by Friday, May 23, 2008." (*Id.* ¶ 34.) He emailed Yates on May 30, 2008, again reporting that she had been denied admission. (*Id.* ¶ 35.) At some point, Powers informed Yates that her application was rejected because her LSAT score was too low. (*Id.* ¶ 49.)

Yates met again with Powers in June 2008 and told him that she was falsely arrested on May 26, 2008 for battery. (*Id.* ¶¶ 33, 108, 134.) On one occasion, on June 5, 2008, Yates

---

[3] Yates alleges that she was employed by the CTA several years ago, where she was subjected to employment discrimination. (Am. Compl. ¶ 9.) She filed discrimination charges in 2004, 2006 and 2007 against the CTA, the City and the State. (*Id.* ¶¶ 11, 50, 188.) She alleges that the CTA "as well as others in Mayor Daley's entourage" retaliated against her. (*Id.* ¶ 11.) Although the details of the scheme are unclear from the Amended Complaint, Yates alleges that she has suffered harassment because she would not help Ronald Huberman and Mayor Daley embezzle money from the CTA's, the City's and the State's "claim fund as an absurd remedy to receiving her settlement from a prior lawsuit." (*Id.* ¶ 45.)

attempted to meet with Powers but was told that he was unavailable to meet with her, although he appeared to be "surfing the web." (*Id.* ¶ 143.) Although she scheduled an appointment with Powers on June 10, 2008, that appointment was cancelled by email dated June 6, 2008, wherein Powers informed Yates that "he had attempted to answer all of her questions via email and did not feel that he had anything more to impart." (*Id.* ¶ 145.) On June 9, 2008, JMLS informed Yates that it would not refund her application fee, which she had borrowed from a church, or return her admissions paperwork. (*Id.* ¶¶ 117, 146, 149, 153.)

Yates alleges that JMLS lied to her about its admissions paperwork retention policy. (*Id.* ¶¶ 118.) Yates called the United States Attorneys' office on June 13, 2008 to complain about the conduct of JMLS, the CTA, the City and the State. (*Id.* ¶ 119.) According to the Amended Complaint, JMLS "must have received a phone call from the [FBI]" because on June 16, 2008, Yates received an email stating that she could pick up her applications materials from JMLS. (*Id.*) She did so on June 20, 2008 but alleges that she "was harassed by being made to stop by the security desk upon retrieving the documents." (*Id.* ¶¶ 147-48.) She further alleges that she was harassed off of JMLS property. (*Id.* ¶¶ 146, 156.) Yates contends that "the underlying reasoning for [JMLS's] retaliation is . . . that [JMLS] was trying to cover up unexposed wrong doing, their political connections and affiliations with Mayor Richard Daley's administration and the fact that individuals associated with the law school have knowledge or have been an accomplice in the act of embezzlement."[4] (*Id.* ¶ 101; *see also id.* ¶¶ 115-16.)

Based on the above, Yates asserts the following claims: (1) disability discrimination;

---

[4] Yates alleges connections between JMLS, the CTA and Mayor Daley because: (1) one of the CTA's corporate attorneys is an adjunct professor at JMLS; and (2) Mayor Daley's brother received an honorary degree from JMLS. (*Id.* ¶¶ 14-15, 102.)

(2) intentional infliction of emotional distress ("IIED") and negligent infliction of emotional and mental distress ("NIED"); (3) aiding, abetting and obstruction of justice; (4) fraud, conspiracy to commit fraud, and perjury; (5) civil rights violations based on her status as a "[s]ingle, [b]lack, African-American, [h]omeless, Christian female" (*id.* at 27); and (6) "retaliation for whistle blowing and being homeless" (*id.* at 2, 40). Yates requests various remedies, including compensatory and punitive damages. (*Id.* at 2-3.) She asks, *inter alia*, that we discipline and disbar her harassers.[5] (*Id.* at 3.) She also requests that JMLS admit her, provide her with JD and LLM degrees, and pay the full cost of her tuition, living expenses, law books and all bar fees. (*Id.* at 17-18.)

## STANDARD OF REVIEW

When considering a motion to dismiss, the court must accept all well-pleaded factual allegations in the claim as true, and draw all reasonable inferences in favor of the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)). A court may grant a motion to dismiss under Rule 12(b)(6) only if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Id.* at 618-619; *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). In order to survive a motion to dismiss for failure to state a claim, the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.

---

[5] As we informed Yates in our prior opinion, we do not have the authority to grant all the relief she seeks. We reiterate that we lack the power to deny JMLS's right to appeal, for example, nor is it our province to disbar attorneys. *See Yates v. John Marshall Law Sch.*, No. 08 C 4127, 2008 WL 4358313, at *1 n.1 (N.D. Ill. Sept. 22, 2008) (hereinafter "*Yates I*").

Ct. at 1965. A sufficient complaint does not have to provide "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555, 127 S. Ct. at 1964-65; *Killingsworth*, 507 F.3d at 618-19; *see also* Fed. R. Civ. P. 8(a). These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *Killingsworth*, 507 F.3d at 618-19.

A *pro se* complaint, as we have here, is to be construed liberally and held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, --- ,127 S. Ct. 2197, 2200 (2007). Nonetheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986); *see also Twombly*, 550 U.S. 555, 127 S. Ct. at 1965.

## ANALYSIS

### A. Yates's Attempts to Re-Allege Claims Previously Dismissed

We first address the sufficiency of several claims, dismissed in our earlier opinion, that Yates has re-alleged in her Amended Complaint.

### I. Negligent Infliction of Emotional Distress

Despite Yates's efforts to re-allege a NIED claim in Count II, her allegations simply do not meet the requirements of Illinois law. As we indicated in our earlier opinion, Yates must allege that a physical act by JMLS caused her injury. *Yates I*, 2008 WL 4358313, at *7; *see Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002); *Corgan v. Muehling*, 143 Ill. 2d 296, 303-04, 158 N.E.2d 602, 604-06 (Ill. 1991). Yates, however, has simply alleged that JMLS's

non-physical conduct affects her physically and mentally.  (*See* Am. Compl. ¶¶ 96-99; Resp. at 10-11.)  These allegations are insufficient and we thus dismiss the NIED claim.

### ii. Fraud, Conspiracy to Commit Fraud & Perjury

In Count IV, Yates repleads claims for fraud, conspiracy to commit fraud, and perjury.  (*Id.* ¶¶ 107-26.)  For the same reasons discussed in our prior opinion, Yates has not and cannot make out a claim for perjury.  *Yates I*, 2008 WL 4358313, at *7, n.12.  (Am. Compl. ¶¶ 120-21.)

As to her conspiracy claim, Yates primarily alleges that she informed JMLS about the ongoing fraud scheme perpetrated by the CTA, the City and the State.  (*Id.* ¶¶ 108-11.)  She contends that JMLS joined in that fraud and conspired to further it by failing to help her, ie., by neglecting to investigate her allegations or report them to the proper authorities.  (*Id.*)  She further alleges that JMLS conspired with the CTA, the City and the State by denying her admission, because of her complaints against them.  (*Id.* ¶ 113.)

We initially observe that Yates's discussions with Powers about the alleged fraudulent acts of other defendants did not impose upon JMLS an affirmative obligation to assist Yates or report her theories to the authorities, as she contends.  (*Id.* ¶¶ 110-11.)  Contrary to Yates's repeated assertions, JMLS owed her no duty – as an agent, fiduciary or otherwise – simply because she applied to the school or informed its dean of her concerns about unrelated entities.  (*Id.* ¶¶ 83-84, 93-95; Resp. at 11-12, 14.)

Moreover, having reviewed her allegations on the whole, Yates has not sufficiently alleged an action for conspiracy to commit fraud.  To do so, she must allege "(1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud."  *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 594 F. Supp. 2d 945, 979-80

(N.D. Ill. 2009) (quoting *Bosak v. McDonough*, 192 Ill. App. 3d 799, 803, 549 N.E.2d 643, 646 (1st Dist. 1989)). To allege a conspiracy, Yates must also plead that the conspirators reached an agreement. *Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1118 (N.D. Ill. 2004). Here, Yates has not alleged that JMLS entered into an agreement with the City, the State and/or the CTA to injure her. And to the extent that her speculative and conclusory allegations attempt to plead such an agreement, they fail to comply with Rule 9(b)'s specificity requirement for fraud claims. *Zurich Capital Markets Inc.*, 332 F. Supp. 2d at 1119 (noting that Rule 9(b) applies to common law action for conspiracy based on fraud); *see* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). (*See* Am. Compl. ¶ 113 (alleging that JMLS conspired with the CTA, the City and the State "to keep the plaintiff from becoming an attorney").) Accordingly, her conspiracy claim fails.

As to the fraud claim against JMLS, Yates contends that Powers lied to her on June 9, 2008, when he told her that JMLS could not return her applications materials. (Am. Compl. ¶¶ 117-19.) She alleges that this "statement was false, known by . . . Powers to be false at the time it was made and used to deceive a homeless, mentally-ill, African-American, Christian woman who had no effective legal representation."[6] (*Id.* ¶ 118.) She points to the fact that just three days later, JMLS informed her that she could, in fact, retrieve her application documents. (*Id.* ¶ 119.) As we concluded in our earlier opinion, Yates fails to state a fraud claim because she has

---

[6] She further alleges that, after she contacted the U.S. Attorneys' office on June 13, 2008, the FBI called JMLS. (*Id.* ¶ 119.) She states that "[t]his is evident because on June 16, 2008" she "received an email stating that she was able to" pick up her admissions materials. (*Id.*) This allegation is entirely conclusory and cannot support a fraud claim.

not alleged that: (1) Powers intended to induce her to act in any way; (2) she relied on this statement; or (3) she suffered any resulting damages. *Yates I*, 2008 WL 4358313, at *7. We thus dismiss Count IV in its entirety.

### iii. Various Civil Rights Violations pursuant to the Illinois Human Rights Act

We turn next to Count V, in which Yates alleges that JMLS harassed her "for being a [s]ingle, [b]lack, African-American, [h]omeless, Christian female." (Am. Compl. at 27.) In her response, Yates clarified that she brings these claims under the Illinois Human Rights Act ("IHRA"). (Resp. at 14 ("There is such a claim . . . under the [IHRA] when the allegations are related to employment discrimination or disability discrimination in public accommodations.").) As we previously instructed Yates, judicial review of IHRA claims is appropriate only if the plaintiff has exhausted her administrative remedies. *Yates I*, 2008 WL 4358313, at *2; *see* 775 ILCS 5/7A-102 (explaining procedures for IHRA proceedings and steps available to complainants); 775 ILCS 5/8-111; *see also Flaherty v. Gas Research Inst.*, 31 F.3d 451, 458 (7th Cir. 1994); *McCraven v. City of Chi.*, 18 F. Supp. 2d 877, 882 (N.D. Ill. 1998); *Mein v. Masonite Corp.*, 109 Ill. 2d 1, 6, 485 N.E.2d 312, 314 (Ill. 1985).

Yates has not alleged that she has pursued a charge with the Illinois Department of Human Rights ("IDHR"). To the contrary, she acknowledges that she has not done so. (Resp. at 15-16.) Although Yates states that the IDHR turned her away because her claims are not employment related, the IHRA expressly permits complaints about non-employment issues, including alleged discrimination with respect to public accommodations. 775 ILCS 5/7A-102 (outlining procedures for claims brought under Articles 2, 4, 5, 5A and 6 of the IHRA, which

address employment, financial credit transactions, public accommodations, higher education[7] and additional violations, respectively). Because Yates admittedly has not exhausted her administrative remedies, we must dismiss Count V.

### iv. Retaliation for Whistle Blowing and Being Homeless

In Count VI of her Amended Complaint, Yates reasserts a whistleblower claim and adds a claim of retaliation based on her homelessness. She alleges that she is "seeking protection under the Whistleblower Act because she reported fraudulent wrongdoing on behalf of" the CTA, the City, the State and JMLS. (Am. Compl. ¶ 191.) Yates, however, does not allege which act she invokes and leaves us no clue as to what statute is at play. Even if we assume that she is referring to either of the primary Illinois or federal whistleblower acts,[8] her claim fails because she has not alleged that she worked for JMLS or sought employment there. *See, e.g.,* 5 U.S.C. § 1201 *et seq.*; 740 ILCS 174/15. In addition, Yates has not identified any state or federal act that protects individuals from discrimination on the basis of their homelessness.[9] Therefore, we dismiss any whistleblowing claim against JMLS and her claim of retaliation based on her

---

[7] For the sake of clarity, we add that the higher education provisions prohibit only sexual harassment in that setting, and Yates has not alleged that JMLS subjected her to sexual harassment. 775 ILCS 5/5A-102.

[8] Of course, numerous other federal statutes include provisions to protect employees from retaliation, including, for example, the Occupational Health and Safety Act, the Clean Air Act, the Sarbanes-Oxley Act and Title VII of the Civil Rights Act. None of these acts are at issue.

[9] The Cook County Human Rights Ordinance provides some protections against discrimination on the basis of housing status. *See* Cook County, Ill., Ord. No. 93-0-13 (Mar. 16, 1993). Nonetheless, Yates has not alleged a violation thereof or filed a complaint with the Cook County Commission on Human Rights, nor does the ordinance clearly cover JMLS's alleged conduct. Moreover, the ordinance's enforcement mechanism – authorizing a private right of action in state court – has previously been held unconstitutional. *Quela v. Payco-General Am. Credits, Inc.*, 84 F. Supp. 2d 956, 958-59 (N.D. Ill. 2000) (holding that the provision authorizing individual actions unduly burdened the judiciary).

status as a homeless person.

### B. Disability Discrimination

In Count I, Yates primarily alleges that JMLS violated the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act by rejecting her law school application on the basis of her disabilities and refusing to accommodate her low LSAT score.[10] (Am. Compl. ¶¶ 39-46, 49, 51.) As set forth below, these claims fail.

#### i. Title II of the ADA

As JMLS discusses in its briefing, Yates has not alleged that JMLS is an entity covered by Title II of the ADA. (Mot. ¶ 3(a); Reply at 1-2.) Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. By definition, "public entity" refers to: (1) "any State or local government;" (2) "any department, agency . . . or other instrumentality of a State . . . or local government;" and (3) "the National Railroad Passenger Corporation, and any other commuter authority." *Id.* § 12131. Because Yates has not alleged that JMLS falls within the ADA's definition of "public entity," we dismiss her Title II claim.

---

[10] Yates also contends that JMLS is not accessible to the disabled as required by the ADA. (*Id.* ¶¶ 60-76.) In particular, she alleges that: (1) the JMLS building "appears to be somewhat outdated," creating a potential fire hazard for individuals in wheelchairs; (2) one of the women's washrooms has a step and no monitor to assist the disabled; and (3) there is an "absence of security personnel available throughout the school;" and (4) JMLS permitted a child to run and play in the admissions office on June 20, 2008, putting the child in danger. (*Id.* ¶¶ 62-63, 65-67, 72, 73-75.) Nonetheless, Yates has not alleged that she was injured or endangered as a result of JMLS's conduct or building. As a result, she does not have standing to pursue such a claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

### ii.     Discrimination under Title III of the ADA and § 504 of the Rehabilitation Act

Yates plainly alleges, however, that JMLS is a "public accommodation," as defined by Title III of the ADA.  42 U.S.C. § 12181(7)(J).  (Am. Compl. ¶ 56.)  She also states that JMLS receives federal funding, thus pleading that is it subject to § 504's nondiscrimination provision. 29 U.S.C. § 794.  (Am. Compl. ¶ 56.)  Accordingly, we consider the sufficiency of her allegations under these statutes.

First, Yates cannot proceed with any claim that JMLS's May 5, 2008 rejection decision was discriminatory.  According to the Amended Complaint, Yates first informed JMLS of her alleged disabilities in her meeting with Powers on May 12, 2008 – after she had been rejected. (*Id.* ¶ 30 ("After she was denied admission, the plaintiff went to see William Powers."); *see also id.* ¶¶ 31-34.)  Thus, JMLS's initial decision to deny her admissions application could not have been based on her alleged disability.

Second, after reviewing Yates's Amended Complaint in its entirety, we conclude that she has not alleged a disability under either the ADA or § 504.[11]  *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).  These statutes define a "disability" as "a physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A); *see* 34 C.F.R. § 104.3(j).  Here, Yates alleges that she suffers from depression and anxiety, as well as high blood pressure.  (Am. Compl. ¶¶ 38-39.)  Although she identifies these physical and mental

---

[11] Courts apply the same analysis for determining whether a plaintiff is "handicapped" under § 504 as they do in determining whether a plaintiff is "disabled" under the ADA. *Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004) ("In view of the similarities between the relevant provisions of the ADA and the Rehabilitation Act and their implementing regulations, courts construe and apply them in a consistent manner."); 29 C.F.R. § 1630 app. at 401; *see also Erickson v. Bd. of Governors of State Colls. and Univs. for Ne. Ill. Univ.*, 911 F. Supp. 316, 322 (N.D. Ill. 1995).  We use the term "disability" for ease of reference.

impairments, she does not allege that they substantially limit one or more of her major life activities. Major life activities can include, for example: "caring for oneself, performing manual tasks, seeing hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). The proper "operation of a major bodily function" may also be considered a major life activity.[12] *Id.* § 12102(2)(B). Yates failed to state how these alleged physical and mental impairments – depression, anxiety and high blood pressure – limit any such major life activities. (*See* Am. Compl. ¶¶ 37-80.) She has not, for example, alleged that her depression and anxiety negatively affect her capacity to learn, work, sleep, care for herself or engage in physical activities, such as walking. Without such allegations, she has not met the definition of "disabled" for purposes of the ADA or § 504. Accordingly, Yates has not stated a disability claim based on either JMLS's May 30, 2008 decision to uphold its May 5 rejection or its alleged refusal to accommodate her by accepting her into the law school despite her low LSAT score.

Third, even if Yates can be considered "disabled" and further assuming that she is "qualified" for acceptance into law school, neither the ADA, nor the Rehabilitation Act, require JMLS to lower its acceptance standards and accept Yates regardless of her admittedly low LSAT score. As the Supreme Court stated in *Southeastern Community College v. Davis*, "Section 504 imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." 442 U.S. 397, 413, 99 S. Ct. 2361, 2370-71 (1979); *Knapp v. Nw. Univ.*, 101 F.3d 473, 482 (7th Cir. 1996) (finding student

---

[12] Later in the Amended Complaint, when describing her IIED claim, Yates alleges that she suffered physical reactions subsequent to Defendants' mistreatment of her, including hair loss, incontinence and bladder problems. (Am. Compl. ¶ 97.) She has not alleged, however, that these constituted part of her disability for purposes of her of her discrimination claim.

not "otherwise qualified" to play intercollegiate basketball because, given his history of sudden cardiac death, he was not physically qualified to participate); *see also Anderson v. Wisconsin*, 841 F.2d 737, 740 (7th Cir. 1988). (Mot. ¶ 3(b); Reply at 1-2.) In her opposition to the present motion, Yates acknowledges that JMLS attempted to accommodate her by "lowering their LSAT admission's acceptance criteria to a score of 140." (Resp. at 6.) She then argues that this conduct was discriminatory because it did not result in her acceptance and "did not provide an adequate accommodation for all mentally disabled applicants with regard to severity of mental impairment." (*Id.* at 6.) She does not indicate her LSAT score, or precisely how much lower JMLS would need to drop its standards for her to meet them. If anything, Yates suggests that JMLS must adopt a sliding-scale policy whereby it accepts LSAT scores for disabled applicants based on the severity of the individual's disability. (*Id.*) Regardless, JMLS is not obligated to lower its admissions standards in such a fashion.[13] *Davis*, 442 U.S. at 413, 99 S. Ct. at 2370-71.

### C. Intentional Infliction of Emotional Distress

In Count II, Yates asserts that JMLS committed the tort of IIED by wrongfully denying her access into the law school. (Am. Compl. ¶¶ 87-90, 96-97.) She alleges that JMLS showed a "reckless disregard for the likelihood of causing [her] distress" by rejecting her application after "she opposed unlawful discrimination, complained about it and disclosed her disabilities to William Powers" on or around May 12, 2008. (*Id.* ¶ 88.) She states JMLS was aware of her

---

[13] To the extent that Yates seeks to level the playing field with respect to her LSAT score, she could have requested an accommodation from the Law School Admissions Council ("LSAC") for the examination itself. Though Yates may not be able to force JMLS to lower its admissions criteria based on her alleged disability, she could (and may) have requested alternate LSAT testing conditions. *See http://www.lsac.org/LSAT/accommodated-testing.asp*. Here, Yates has not alleged that JMLS is responsible for the administration of the LSAT exam or her resulting score.

mental illness and homelessness and nonetheless took advantage of her, because Powers refused to meet with her and she was harassed by a JMLS employee when she retrieved her admissions paperwork. (Resp. at 9-10.) She alleges that these events exacerbated her emotional distress and lead to physical injuries, such as hair loss and incontinence. (Am. Compl. ¶¶ 90, 92, 96-97.)

To state an IIED claim, Yates must allege that: (1) JMLS's conduct was extreme and outrageous; (2) JMLS intended that its conduct would "cause severe emotional distress or [was] aware of a high probability of causing severe emotional distress;" and (3) JMLS's conduct actually caused severe emotional distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 982 (7th Cir. 2008); *Dunn v. City of Elgin*, 347 F.3d 641, 651 (7th Cir. 2003). Liability for IIED "does not extend to mere insult, indignities, threats, annoyances, petty oppressions or trivialities" and can attach "only in circumstances where the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 935, 803 N.E.2d 619, 625 (1st Dist. 2004) (internal quotations and citations omitted). Indeed, the "distress inflicted must be so severe that no reasonable person could be expected to endure it." *Id.*; *see also Lewis v. Sch. Dist. #70*, 523 F.3d 730, 746-47 (7th Cir. 2008); *Hobson v. Tishman Speyer Props., L.P.*, No. 07 C 5744, 2008 WL 2625905, at *5-6 (N.D. Ill. June 27, 2008); *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (Ill. 1989). "Whether the conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case." *Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1057 (N.D. Ill. 2008); *see Thomas*, 345 Ill. App. 3d at 936, 803 N.E.2d at 625; *Graham v. ComEd*, 318 Ill. App. 3d 736, 745 742 N.E.2d 858, 866 (1st Dist. 2000).

Here, Yates has not clearly alleged that JMLS intended to cause her severe emotional

distress or was aware of a high probability of doing so.[14] She alleges that JMLS exhibited a "reckless disregard for the likelihood of causing [her] distress" by denying her admission and access to the school, but this allegation is not equivalent to a claim that JMLS knowingly engaged in conduct with knowledge of a "high probability" of inflicting severe emotional harm.

Even assuming that Yates sufficiently pled the second element required to an IIED claim, JMLS persuasively argues that its alleged conduct cannot be considered "extreme and outrageous." (Mot. ¶ 4(a); Reply at 3.) Yates does not address this issue in her response brief and we conclude that, as a matter of law, the conduct alleged is not sufficiently "extreme and outrageous" to state a claim for IIED. Reviewing Yates's allegations on the whole, and drawing all inferences in her favor, JMLS's May 30, 2008 denial of her application to law school and all subsequent behavior – including its initial refusal to provide admissions paperwork, later acquiescence to that request, and alleged forcing her off of JMLS property – is not so outrageous "as to go beyond all possible bounds of decency." *Thomas*, 345 Ill. App. 3d at 935, 803 N.E.2d at 625. Yates describes quite trivial slights, such as Powers's refusal to meet with her repeatedly in June 2008, after having met with her on May 12, or JMLS's apparently insulting offer of a one-day bus pass to defray her transportation expenses. (Am. Compl. ¶¶ 88, 143, 145, 205.) Her more substantive complaints, such as harassment off of JMLS property, fare no better, as they objectively are not "so severe that no reasonable person could be expected to endure it." *Thomas*, 345 Ill. App. 3d at 935, 803 N.E.2d at 625. Yates does not allege, for example, that she was physically attacked, threatened or verbally abused, or that JMLS's offensive conduct

---

[14] We add that in her original complaint, Yates alleged that JMLS acted with "intent to outwardly . . . inflict pain." (Compl. of 7/21/2008 at 43.) This allegation was not included in her Amended Complaint.

-15-

continued for any length of time. Indeed, even JMLS's May 30 rejection of her law school application with knowledge of her alleged vulnerability cannot rise to the level of extreme and outrageous conduct under these circumstances. Law schools deny applications routinely, and these necessary decisions cannot be deemed objectively outrageous for purposes of an IIED claim, barring some truly extreme factual scenario not alleged here. For the above reasons, we grant JMLS's motion as to Count II.

### D. Aiding, Abetting and Obstructing Justice

With respect to Count III, Yates alleges that JMLS conspired with the CTA, the City and the State to deny her admission to law school. (Am. Compl. ¶¶ 101-03.) She further alleges that JMLS "remained willfully and consciously indifferent by ignoring [her] requests for help," a form of "aiding, abetting, impeding and obstructing justice." (*Id.* ¶ 105.) As the Seventh Circuit has stated, however, "there is no tort of aiding and abetting." *E. Trading Co. v. Refco, Inc.*, 229 F.3d 617, 623 (7th Cir. 2000) ("Law should be kept as simple as possible. One who aids and abets a fraud is guilty of the tort of fraud (sometimes called deceit); nothing is added by saying that he is guilty of the tort of aiding and abetting as well or instead."). As JMLS points out, aiding and abetting is not a separate tort under Illinois law (Reply at 4) and thus, "there must be an otherwise actionable tort that the defendant aided and abetted," resulting in his or her liability for that underlying tort. *Sanchez & Daniels et al. v. Koresko & Assocs. et al.*, No. 04 C 5183, 2006 WL 3253604, at *6 (N.D. Ill. Nov. 8, 2006). Because we have already dismissed Yates's

tort claims, there are no underlying torts that JMLS could have aided and abetted. Accordingly, we dismiss Count III.

## CONCLUSION

As set forth in detail above, we grant JMLS's motion. This matter is terminated in its entirety.[15] It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: May 11, 2009

---

[15] In closing, we remind Ms. Yates that she has an obligation to refrain from filing meritless claims. Yates has previously filed at least four other complaints in the Northern District of Illinois that have been dismissed as duplicative and/or frivolous. *See, e.g.*, *Yates v. ABC News, WLS-TV*, No. 08 C 4363 (dismissed 10/21/2008); *Yates v. Chi. Transit Auth.*, No. 08 C 4566 (dismissed 1/14/2009); *Yates v. Chi. Transit Auth.*, No. 08 C 4597 (dismissed 4/14/2009); *Yates v. Moolyail*, No. 08 C 4653 (dismissed 11/17/2008). We caution Ms. Yates that she may be subjected to sanctions for abusing the court system if she continues to file frivolous actions.